UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

IN RE:
      LILLIE MAE BANKS,                                    CASE NO. 17-10456
      Debtor                                                          CHAPTER 7

### ACTING UNITED STATES TRUSTEE'S MOTION TO ENFORCE FEBRUARY 6, 2018 ORDER AND TO PROVIDE ANY FURTHER RELIEF NECESSARY

COMES NOW David W. Asbach, Acting United States Trustee for Region 5 ("UST"), who moves the Court pursuant to 11 U.S.C. § 105 to order Law Solutions Chicago, LLC, an Illinois limited liability company doing business in Louisiana under the trade name UpRight Law LLC ("UpRight") to comply with the Court's order signed February 2, 2018 and entered February 6, 2018 (the "February 6th Order") and to impose any further relief necessary. *See* Dkt. #41. The UST and UpRight have been unable to agree on UpRight's responsibilities for UpRight's retained but unfiled clients (the "Unfiled Clients") during the 90 day filing suspension imposed by the Court. UpRight proposed that these clients simply enter new retainer agreements with its local attorneys, while UpRight retains its "earned" fees. UpRight's proposal would not only violate the Court's February 6th Order but would further force those clients into a new attorney-client relationship without regard to the clients' informed consent, in *continuing* violation of the Louisiana Rules of Professional Conduct ("LRPC" or "Professional Rules").[1] Instead, the proper

---

[1] LRPC 1.4 Communication requires:
    (a) A lawyer shall:
        (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
        . . .
        (2) keep the client reasonably informed about the status of the matter

1

procedure is for UpRight to inform all Unfiled Clients of UpRight's suspension, provide a full refund of all funds collected, and inform those clients that they may seek new counsel. This Motion is supported by the entire record before the Court in this case and the following:

## BACKGROUND

Among other relief, the Court's Order provided that:

> . . . [P]ursuant to Local Civil Rule LR83.2.10, the Court suspends UpRight Law, LLC from filing any bankruptcy case in the Western District of Louisiana effective on the date this order is entered for a period of 90 days. This suspension includes any of UpRight's partner attorneys. . . . However, partner attorneys who maintain separate legal practice may continue to file bankruptcy cases for those clients not contracted with or represented by UpRight. Partner attorneys may also participate in any bankruptcy cases filed by UpRight prior to the entry of this order.

*See* February 6th Order at 36 – 37.

The February 6th Order thus provided that UpRight is suspended from filing cases in the Western District of Louisiana (the "Western District") for 90 days and that local Upright attorneys cannot file cases in their separate practices during UpRight's suspension for clients contracted with or represented by UpRight. The matter in dispute is what UpRight must do for Western District clients who have retained UpRight but who have not yet had a Petition filed on their behalf.

---

. . .
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued.

*See* Court's February 6th Order at 30. *See also* Louisiana Rules of Prof'L Conduct with Amendments through July 1, 2016 (The Louisiana Attorney Disciplinary Board 2016), *available at:* https://www.ladb.org/Material/Publication/ROPC/ROPC.pdf at 2 – 3.
LRPC 1.0(e) defines "[i]nformed consent" to be "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonable available alternatives to the proposed course of conduct." *See id.* at 1.

2

On February 8, 2018, after UST inquiries, UpRight presented the following proposal for the Unfiled Clients (the "Proposal"):

1. The client will sign a new retainer agreement with the UpRight Law partner through that partner's separate practice.

2. UpRight Law will perform a conservative accounting of work performed for the client to date, which would include work performed by the partner in his or her capacity as a partner of UpRight Law. UpRight Law will refund to the client any unearned portion of the attorney's fee, as well as the filing fee.

3. Each UpRight Law partner will agree to take the client's case to completion for a specified amount (for example, $500). If the unearned portion of UpRight Law's attorney's fee that is refunded to the client is less than the attorney's fee to be paid to the UpRight Law partner through his or her separate practice, UpRight Law will pay the difference to the partner.

4. The Rule 2016(b) Disclosure of Compensation and the applicable SOFA provisions will reflect how fees were paid to UpRight Law and the partner in his or her separate practice, and the source of those funds.

The UST responded that the Proposal was inconsistent with the Court's February 6th Order. UpRight indicated it would seek permission for its Proposal from the Court by February 13, 2018, but did not do so.

Given the urgent need to clarify UpRight's responsibilities toward its Unfiled Clients, the UST informed UpRight it would be filing this Motion on February 16, 2018. UpRight responded with a modified proposal (the "Last Minute Proposal"):

> Rather than file a motion for clarification with the Court, we are going to notify clients who are ready to file or near ready to file (i.e., clients who are paid in full and ready to go) of the Court's ruling, explain that we are unable to file cases for a period of 90 days, and offer to fully refund fees if the clients do not wish to wait.

The UST responded that all Unfiled Clients, not just those in UpRight's judgment "ready to file," should be given notice of the suspension and a refund. Furthermore, the UST would need to review the adequacy of UpRight's notice to those clients. Given the need to clarify UpRight's

3

duties, the parties agreed the UST would file this motion and seek an expedited hearing for February 20, 2018.

## ARGUMENT

### I. UpRight's Proposal Violates the Court's February 6th Order and Would Continue UpRight's Disregard of the Louisiana's Professional Rules

UpRight's preferred Proposal for the Unfiled Clients in the Western District makes a mockery of the Court's 90 day suspension and further reveals UpRight's disregard of Louisiana's Professional Rules. In contravention of the Court's Order that UpRight *not* file cases for 90 days and its partner attorneys similarly *not* file cases for those clients contracted with or represented by UpRight, UpRight proposes just to relabel its clients as clients of its local attorneys' separate practices, with UpRight retaining "earned" fees to boot. UpRight states that the local attorneys would receive $500, or some similar amount, for undertaking the entire representation to completion. The Proposal simply continues – in a slightly altered fashion – the same practice model that led to UpRight's suspension. UpRight would be paid essentially for its telemarketing activities, while local attorneys receive some fraction of a normal fee for doing all the actual work of representing the client. The very notion of "earned" fees for UpRight is problematic, considering that the Court found that "Upright appears to be nothing more than a referral service." *See* Court's February 6th Order at 29. Yet for this "service," UpRight's contract states that it can bill debtors at $395 an hour for attorney time and $125 for paraprofessionals. UST Ex. 3 at ¶ 2. Allowing UpRight to reap profits in this manner during a 90-day suspension for serious misconduct would make the suspension a nullity.

The UpRight Proposal is also flatly inconsistent with the terms of the Order. The Order states that ". . . partner attorneys who maintain separate legal practice may continue to file

4

bankruptcy cases *for those clients not contracted with or represented by UpRight*." *See* Court's February 6th Order at 37 (emphasis added). The Court thus clearly anticipated and acted to forestall UpRight from relabeling its current clients as clients of the local attorneys' separate practices for purposes of filing. UpRight's Proposal attempts to circumvent the Court's clear mandate by proposing that Upright's Unfiled Clients "sign a new retainer agreement with the UpRight Law partner through that partner's separate practice." UpRight apparently believes this action would sever UpRight's contract with the client and end UpRight's representation to thereby allow the local attorney to file the case, since the client would no longer be "contracted with or represented by UpRight" under the terms of the Court's Order.

First, just as courts "give effect . . . to every clause and word of a statute, avoiding . . . any construction which implies that the legislature *was ignorant of the meaning of the language it employed*[2]," the reading of the Court's Order that gives meaning to all its terms is that local attorneys cannot file cases in their separate practices during the 90-day suspension period for Western District individuals *who were UpRight clients* on the day the February 6th Order was entered. Individuals who were UpRight clients as of February 6, 2018 includes the Unfiled Clients. UpRight proposes instead to stage manage a paper transition of those clients to the local attorneys' separate practices, an obvious subversion of the Court's intent which would render UpRight's suspension largely meaningless and as "mere suplusage."[3] Second, if UpRight intends to unilaterally sever its contracts with its clients, it certainly has no right to retain any

---

[2] *See Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883).
[3] *See Corley v. United States*, 556 U.S. 303, 314 (2009) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004), *rev'd on other grounds, Ariz. Christian Sch. Tuition Org. v. Winn.*, 563 U.S. 125 (2011) and holding "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . ."). The UST asserts that each provision of the Court's February 6th Order should be given similar effect.

5

17-10456 - #46 File 02/16/18 Enter 02/16/18 14:22:21 Main Document Pg 5 of 12

fees earned under those contracts.  Third, the new retainer agreement between the Unfiled Clients and the local attorneys would clearly not be a freely agreed contract between the clients and their "new" counsel.  Instead, UpRight would set the terms of the representation, including the fee earned by the local attorney; this is entirely inconsistent with actual independent representation by the local attorney.   The clients' "new" attorney-client relationship with the local attorney would be compromised and illegitimate from its inception.  The Court's February 6th Order prevents such chicanery during the suspension period by plainly barring local attorneys from filing cases for UpRight clients in their separate practice during the suspension.  UpRight should not be allowed to evade the Court's February 6th Order by herding the Unfiled Clients into allegedly new but in reality sham retainer agreements with the local attorneys.

UpRight's Last Minute Proposal is still defective.  It allows UpRight to pick and choose which among the Unfiled Clients are entitled to notice of its filing suspension and a refund.  All of these clients are entitled to notice, and all are entitled to a full refund of all fees paid.

## II.  **UpRight Must Notify Its Unfiled Clients of Its Suspension and Provide Them a Full Refund of All Fees Collected**

UpRight's Proposal and its Last Minute Proposal show a continuing disregard to the Louisiana Professional Rules.   Under those rules, what are UpRight's obligations to the Unfiled Clients during the 90 day suspension?  First, UpRight must, without further delay, notify these clients of its suspension from filing cases in the Western District for 90 days.  LRPC 1.4 imposes on lawyers a duty of adequate communication with their clients, including a duty "keep the client reasonably informed about the status of the matter," especially "when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law." *See* LRPC 1.4(a)(3) and (a)(5), respectively.  Here, the Court's 90 day bar on UpRight from filing

6

cases for the Unfiled Clients is certainly highly pertinent information concerning the status of their representation, information UpRight has a duty to provide them immediately.

Furthermore, given that UpRight cannot file cases for these clients for 90 days because of its misconduct, it cannot fulfill its central contractual promise of "filing the petition, all required lists, schedules and statements, as well as any amendments that may be necessary or appropriate." UST Ex. 3 at ¶ 8. As such, during the 90-day suspension period, UpRight also will not be able to comply with LRPC 1.3's requirement that a lawyer act "with reasonable diligence and promptness in representing a client." Given that UpRight will be unable – because of its own misconduct and through no fault of its clients – to fulfill either its contractual promises to its clients or its professional responsibilities under the LRPC, UpRight must provide its Unfiled clients a full refund of all funds collected from them. In doing so, UpRight must inform the Unfiled Clients they are free to pursue new counsel if they choose. If they choose to remain represented by UpRight, they can return the refunded fees along with any other fee amounts outstanding for UpRight to file their case after the suspension ends. The UST asserts that UpRight can only fulfill its LRPC 1.4 duty to fully inform the Unfiled Clients by: (1) providing notice of UpRight's 90 day suspension, (2) providing the basis for the suspension and the terms of the suspension as explained in the Court's February 6th Order, (3) informing the clients they are free to seek legal assistance elsewhere so that their case can be filed without the delay caused by UpRight's wrongdoing.

As to who may provide the Unfiled Clients legal assistance, the most straightforward interpretation that gives meaning and does not contradict any provision of the Court's February 6th Order is: Neither UpRight nor UpRight local attorneys can file "new" cases for UpRight's

Unfiled Clients *during* the 90-day suspension period (i.e., February 6th – May 7, 2018) to avoid the kind of sham representation presented by UpRight's Proposal.

Every day the needs of UpRight's Unfiled Clients remain unaddressed, which increases the chance these clients will be prejudiced by the filing delay caused by UpRight's misconduct. The UST proposes the following:

- UpRight must provide a notice ("Notice") via overnight mail to the Unfiled Clients which satisfies UpRight's obligations under the Louisiana Professional Rules. The Notice must:

- (1) inform the Unfiled Clients about the suspension, (2) provide them with a copy of the Court's February 6th Order; (3) provide them a refund of all funds they have paid to UpRight; and (4) inform them they have a right to seek a new attorney not affiliated in any way with UpRight.

- The Notice should also state that any Client who requests one will be sent a copy of their client file free of charge.

- Before the Notice is sent, the UST must be given a copy of the Notice for approval of its adequacy.

- Upon completion, UpRight must certify to the Court that the Notice was sent to all its Unfiled Clients, provide the names of the Unfiled Clients in the certification, and the amounts refunded to each.

- UpRight must complete this Notice to all Unfiled Clients and certification within 10 days from the hearing on the expedited Motion (the "Deadline"); otherwise, upon a notice of non-compliance filed with the Court by the UST, UpRight should pay a civil penalty of $100 per day after the Deadline per Unfiled Client, payable to the United States Treasury

c/o Richard H. Drew, Office of the United States Trustee, 300 Fannin St. Suite 3196, Shreveport, Louisiana 71101.

Besides providing the Notice to its existing Unfiled Clients, UpRight should be barred from creating new Unfiled Clients. It is inconsistent with the Louisiana Professional Rules for UpRight to accept new Western District clients during the suspension period, in full knowledge that is barred from filing their petition for a significant period of time. The Court should therefore forbid UpRight from entering into new retainer agreements with Western District residents during the suspension period.

### III. Enforcing Other Relief Provided in the Order

While the UpRight's Unfiled Clients are the most urgent priority at this time, the Court's Order allows the UST to request the Court provide further enforcement instruction. The Court found the UpRight retainer agreement deficient in at least two respects: First, the retainer agreement did not comply with LRPC 1.5 concerning the refund of fees and fee disputes. The Court provided specific language that must be included in any contract with a Western District of Louisiana resident. *See* February 6th Order at 37-38. Second, the retainer agreement provided for impermissible "unbundling" of services concerning reaffirmation agreements, which are potentially central to a chapter 7 representation. *Id.* at 8. The Court provided that all future retainer agreements must specifically include all services integral to a chapter 7 filing. *Id.*

Since UpRight's current retainer agreements are defective, the UST submits that UpRight must send a letter to **_all_** of its current Western District clients binding itself to comply with the language provided by the Court concerning LRPC 1.5 and stating clearly that services concerning reaffirmation agreements are not subject to additional charge. The UST requests

that the UST be allowed to review the letter before it is sent in order to confirm its adequacy and receive a list of those clients to whom it is sent.

The Court also ordered that UpRight not accept any payment from a Western District resident who has not "had a thorough and adequate consultation with an attorney that is licensed to practice in this District and is able to represent them." *See* February 6th Order at 37. For each new UpRight filing after the suspension period, if any occur, UpRight should be required to file an affidavit with the Court certifying its compliance with this requirement. The certification should provide the date of the consultation and the name of the attorney that conducted it.

## CONCLUSION

For the foregoing reasons, the UST requests that the Court grant the UST's Motion and any such clarifying and additional relief pursuant to 11 U.S.C. § 105 to ensure compliance with the Court's February 6th Order.

Respectfully submitted,

DAVID W. ASBACH
Acting United States Trustee
Region 5, Judicial Districts
of Louisiana and Mississippi

***By:/s/ Richard H. Drew***
Richard H. Drew, LA #32434
Trial Attorney, Office of the US Trustee
300 Fannin Street, Suite 3196
Shreveport, Louisiana 71101
Telephone no. (318) 676-3456
Direct telephone no. (318) 676-3484
Facsimile no. (318) 676-3212

CERTIFICATE OF SERVICE

   I hereby certify that a copy of the above and foregoing ACTING UNITED STATES TRUSTEE'S MOTION TO ENFORCE FEBRUARY 6, 2018 ORDER AND TO PROVIDE ANY FURTHER RELIEF NECESSARY, has been either mailed by first class mail, postage prepaid, or transmitted by CM/ECF to the following parties:

Law Solutions Chicago, LLC
d/b/a UpRight Law LLC
79 W. Monroe St, Fifth Floor
Chicago IL 60603.

United States Attorney's Office
Western District of Louisiana
Attn: Bankruptcy
300 Fannin Street, Ste 3201
Shreveport, LA 71101-3068

Date: February 16, 2018          By:*/s/Sue Newcomer*
                      Sue Newcomer
                      Office of the United States Trustee
                      300 Fannin Street, Suite 3196
                      Shreveport, LA 71101
                      Telephone No. (318) 676-3456